O'BOYLE v. NORWALK TOWING CO.

(District Court, D. Connecticut. January 2, 1913.)

No. 1,679.

TOWAGE (§ 11*)—INJURY TO TOW—NEGLIGENCE OF TUG.

A tug *held*, on the evidence, not in fault for an injury to a barge laden with stone, which she towed near a temporary wharf and beached for unloading, and which was strained and injured because of a channel under her bottom.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

In Admiralty. Suit by Joseph E. O'Boyle, by Anthony O'Boyle, his next friend, as owner of the barge Margaret A. Hayden, against the Norwalk Towing Company, owner of the tug Addie V. Decree for respondent.

Hyland & Zabriskie, of New York City, for libelant.
John H. Light, of South Norwalk, Conn., for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MARTIN, District Judge. The complainant is the owner of a barge called Margaret A. Hayden, which, in August, 1911, he had loaded at Rondout, N. Y., with a cargo of between 350 and 400 cubic yards of crushed stone, to be delivered to one Arnold Schlaet, at Compo Beach, in the town of Westport, Conn., at a temporary wharf, 40 feet in width, built by said Schlaet for his own convenience. This said Schlaet had in his employ as superintendent Mr. Alfred Maddock, who leveled off a place in front of said temporary wharf, a space of the width of the wharf, and widening out therefrom until it was about 80 feet wide, and extending out into the Sound from 75 to 100 feet, for the beaching of scows and barges.

The plaintiff telephoned C. W. Crane & Co. for the towing of his barge from Wilson's Point to said Schlaet's wharf at Compo Beach, and Crane & Co. secured the services of the defendant, the Norwalk Towing Company. The defendant manned their tug, the Addie V., with Capt. Lockwood and Engineer and Manager Howard. They towed said barge to a point within 40 feet of the said Schlaet dock, and there she was beached.

The plaintiff claims that she was beached astride a channel about 60 feet in width, and so deep that the barge rested with her bow and stern upon the sand on either side of said channel; that when the barge was so beached it was about high tide. Upon the tide's receding, the weight of the load of the barge settled her somewhat in and about her center, so that she required docking for repairs, and the plaintiff in his libel claims that the said scow Margaret A. Hayden was badly strained and twisted, and her bottom, decks, sides, and seams damaged. I refer to Exhibit B, which is the survey of her injuries.

In support of this claim, the plaintiff testified that the barge was towed too far north, so that she could not be landed upon this space that had been leveled off by Mr. Maddock for the beaching of barges; that the defendant was at fault in not turning the course of the barge toward the said dock farther south, and, if he had done so, he could have landed her within 20 feet of the said dock, out of the reach of the channel, and upon the surface that had been leveled off, so that she would have rested upon her whole bottom. He was corroborated in this by Mr. John O'Boyle, his cousin (and his partner in other matters, but not in this).

The defendants claim that said barge was handled carefully, and was towed in the proper place, and beached as near the dock as she could be; that she was over the spot leveled off by said Maddock, and about in front of the said dock; that it was impossible to get her nearer, because of the depth of draft of the scow Margaret A. Hayden being 6 feet and 9 inches; that there was no channel on that beach, as claimed by the plaintiff, and no known defects on the beach at the point where said scow or barge was left, and so, in brief, the defendant claimed that its captain and engineer were without fault.

Captain Lockwood, Engineer Howard, and a Mr. Nash, called by the defendant, and said Alfred Maddock, called by the plaintiff, contradicted the evidence given by the plaintiff as to where said scow lay,

and as to there being a channel on that beach, and the captain and the engineer testified that they had never heard, and did not know, there was any channel there in fact, and insisted that there was no government survey, and no chart of any sort, which makes any reference to such a channel, and that upon careful inquiry they asserted that there was none. They were substantially corroborated by Maddock and Nash; but Nash and Maddock say that there is a mill pond a short distance inland, used as an oyster pond mainly, and there are some dams with drawgates, and when those gates were opened, and water coming out of that pond, it made a little depression in the sand. At low tide, when the gates are closed, that depression will have about 3 inches of water. When the gates are opened, there will be more water there, depending upon the fullness of the pond and the opening of the gate, sometimes a foot or more in depth. Nash testified that when the barge was beached it was across this outflow from said pond, and that while she lay there the gates were opened, and the result of it was a washing out from underneath the barge of the sand to a depth of 3 feet or more, and he estimated the width of that washout to be about 7 feet.

I find the facts to be as testified by Mr. Nash. I further find that the barge was not towed too far to the north, and did rest over this space that had been leveled off, and that, had it not been for this washout, there would have been no damage to the barge, unless by reason of its age and condition. I further find that if the barge was in a suitable state of repair, and not deteriorated by 22 years of service, she would have been uninjured by reason of the washout above described. I find there was nothing that amounted to what could be called a channel at the point described. I further find that the barge did not lie across the center of this waterway, as testified to by the plaintiff, but the washout came to within 5 to 10 feet of the stern.

The only corroborating witness for the plaintiff was his cousin, above mentioned, and he was in such a condition that counsel for the plaintiff, who put him upon the stand, later requested the marshal to eject him from the courtroom. His manner upon the stand, and his general demeanor in court, were of such a character that but little dependence could be placed upon his evidence. I am unable to find from this evidence any want of skill or competency or care on the part of the defendant's crew in charge of the tug, either in the towing or landing, and no defect in the beach at the point in question that the captain or engineer knew anything about, or should be charged with knowledge thereof.

The evidence was undisputed that they carefully sounded for the depth of water, and when within a short distance of the beach they sounded both on the tug and on the barge, and that the reason why she was not landed nearer the wharf, and out of reach of the spillway above mentioned, was that she drew too much water.

Let there be judgment for the defendant.